**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence N. Cherry, et al., | |
| Plaintiffs, | No. CV-15-00236-PHX-PGR |
| vs. | ORDER |
| United States of America, | |
| Defendant. | |

Pending before the Court is the United States' Motion for Protective Order Precluding Disclosure of the Treatment Records Mailed to the Court by St. Luke's Behavior Health Center (Doc. 107). Having considered the parties' memoranda, the Court finds that the motion should be granted pursuant to Fed.R.Civ.P. 26(c)(1)(A).

This is a medical malpractice action filed against the United States pursuant to the Federal Tort Claims stemming from treatment plaintiff Lawrence Cherry received through the Department of Veterans Affairs. Non-party Steven Carbonniere is a physician assistant employed by the VA who was involved in the plaintiff's treatment between January 13, 2010 and February 11, 2011. During his deposition on August 28, 2015, Mr. Carbonniere testified that he had undergone a five-day inpatient detoxification program at St. Luke's Behavior Health Center ("St. Luke's")

in September 2011 for opioid dependence stemming from his chronic back pain. He further testified that he had been abusing narcotics for maybe six or eight months prior to September 2011, but that it didn't become a complusive problem until the summer of 2011, that he had written narcotic prescriptions for himself using fictitious names somewhere in the area of January or March 2011 through the late summer of 2011, and that he was taking oxycodone on a daily basis for probably four or five months prior to entering the St. Luke's program. In a declaration, Mr. Carbonniere stated while at St. Luke's he underwent a medically assisted detoxification using methadone and participated in counseling involving both individual and group sessions.

During Mr. Carbonniere's deposition, the plaintiffs' counsel asked him to release his St. Luke's medical records and he refused. Three months later, on November 24, 2015, the plaintiffs' counsel sent a medical authorization form for Mr. Carbonniere's St. Luke's records to the United States Attorney's Office, which that office forwarded to Mr. Carbonniere on November 30, 2015. In a declaration, Mr. Carbonniere stated that he did not sign the release form because he wanted to maintain the confidentiality of his St. Luke's records. Seven month later, on June 22, 2016, the plaintiffs' counsel, without notice to Mr. Carbonniere, sent a subpoena to St. Luke's for "all records concerning the treatment" of Mr. Carbonniere by St. Luke's "and any other professionals to whom your facility referred him or from whom you received records."[1] The plaintiffs' counsel gave St. Luke's until July 13, 2016 in

---

[1] The subpoena stated that the produced records should include:

- Copies of complete chart, progress notes and interview notes, discharge summaries, counseling records, patient substance abuse history, medication logs, orders, mental health treatment

which to produce Mr. Carbonniere's medical records.  Rather than producing the records to the plaintiffs' counsel, St. Luke's, without notifying Mr. Carbonniere, sent the records directly to the undersigned Judge, with the notation that it had informed counsel for both sides that it was doing so because "Pt auth not available."  In its cover letter, dated July 12, 2016, St. Luke's stated that Mr. Carbonniere's records were being sent to the undersigned Judge under seal "as we have not received authorization from the patient, nor a court order to disclose them to the court."

Discussion

A. The Subpoena was Untimely

The Court concludes that the United States' motion should be granted because the plaintiffs' subpoena to St. Luke's was untimely.  Pursuant to the Court's amendment (Doc. 63), entered on November 17, 2015, to the Scheduling Order (Doc. 37), the deadline to complete all fact discovery was July 1, 2016.  The Scheduling Order provided in relevant part that "[d]iscovery which cannot be timely responded to prior to the discovery deadline will be met with disfavor, and could result in denial of an extension, exclusion of evidence, or the imposition of other sanctions."  Notwithstanding that the plaintiffs' counsel knew about Mr. Carbonniere's treatment at St. Luke's no later than August 28, 2015, the plaintiffs' subpoena to St. Luke's for his medical records was not issued until June 24, 2016, just six days before the fact discovery deadline, and had a return date of July 13, 2016, which was twelve days after the discovery deadline.  The plaintiffs did not

---

records, substance abuse treatment, and/or videotaped interviews, written documents submitted by patient, laboratory tests, etc., whether in electronic or other format;
- Billing records and Explanation of Benefits including list of all healthcare provider and all other related billing/payment records[.]

seek an extension of the fact discovery deadline and have not provided any explanation as to why they could not have timely sought the St. Luke's records.

B. The Subpoena Violates Federal Law

The Court further, and more importantly, concludes that the United States' motion should be granted because the plaintiff's subpoena to St. Luke's was not sought or issued in compliance with the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq.*, and the pertinent regulations promulgated pursuant to HIPAA.

HIPAA governs the dissemination of protected health information, and its regulations place strict limitations on the ability of heath care providers to release a patient's medical records or discuss the patient's medical history without the express consent of the patient. The relevant regulation, 45 C.F.R. § 164.512(e), which provides for disclosures during judicial and administrative procedures, applies to medical information sought during discovery. Briefly stated, this regulation provides in relevant part that, in the absence of a court order authorizing the disclosure or the submission to the court of a request for a qualified protective order covering the disclosure, neither of which is present here, a patient's records can only be disclosed by a healthcare provider in response to a subpoena or discovery request when (1) that request is accompanied by a written statement by the requesting party satisfactorily assuring the provider that the requesting party has made a good faith attempt to provide written notice to the patient, that the notice included sufficient information about the litigation underlying the request to permit the patient to raise an objection to the court, that the time for the patient to raise an objection to the court has elapsed, and that no objection was filed or that any filed objection had been resolved by the court and the records being sought are consistent with the

court's resolution, § 164.512(e)(ii-iii), or (2) in the absence of the receipt of a satisfactory assurance from the requesting party, that the medical care provider has made the required reasonable effort to notify the patient about the discovery request or has sought to obtain a qualified protective order. § 164.512(e)(vi). A review of the subpoena-related documents submitted to the Court by St. Luke's and the parties, which include St. Luke's cover letter to the Court confirming that it had not received any authorization from Mr. Carbonniere for the disclosure of his records nor any court order authorizing their disclosure, and Mr. Carbonniere's declaration stating that neither the plaintiffs' counsel nor St. Luke's contacted him to indicate that his records were being sought via subpoena or that they were going to be released to the Court, persuade the Court that Mr. Carbonniere's records cannot be disclosed to the plaintiffs because the regulatory requirements of § 164.512(e) were not met.

The United States argues for the first time in its reply that Mr. Carbonniere's substance abuse treatment records are also protected from disclosure under the Public Health Service Act "(PHSA"), 42 U.S.C. § 290dd-2(a) and its accompanying regulations.[2] The United States asserts that St. Luke's is a "federally assisted program" for purposes of the PHSA pursuant to 42 C.F.R. § 2.11 because it

---

[2]

Section 290dd-2(a) provides that

[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

- 5 -

conducts methadone maintenance treatment programs, and pursuant to 42 C.F.R. § 2.12(b) because it is licensed to dispense controlled substances as part of its treatment programs as established by its DEA registration number as a Narcotic Treatment Program. Assuming that St. Luke's falls within the purview of the PHSA, which appears to be the case, then in the absence of Mr. Carbonniere's consent, the disclosure of his medical records to the plaintiffs is only permissible "[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm." § 290dd-2(b)(2)(C). Nothing in the record of this action establishes that the plaintiffs made any effort to comply with the PHSA, or its relevant regulation governing the application for a court order of disclosure, 42 C.F.R. § 2.64, before sending its subpoena to St. Luke's.

C. Psychotherapist-Patient Privilege

The United States primarily argues that the involuntary disclosure of Mr. Carbonniere's medical records from St. Luke's is barred by the federal psychotherapist-patient privilege. The Court agrees with the United States that this privilege constitutes yet another reason to grant its Rule 26(c) motion.

First, the Court is unpersuaded by the plaintiffs' contention that the United States does not have standing to assert the privilege on behalf of Mr. Carbonniere. As a party to this action, the United States has the right to move for a protective order pursuant to Rule 26(c)(1) on the ground that the medical records sought by the plaintiffs are privileged and thus outside the scope of discovery permitted by Rule 26(b)(1).

Second, the Court disagrees with the plaintiffs' contention that Mr. Carbonniere's records do not fall within the scope of the privilege. The Supreme

Court has recognized an absolute psychotherapist-patient privilege for confidential communications made to licensed psychiatrists, psychologists, and social workers in the course of psychotherapy diagnosis and treatment. Jaffee v. Redmond, 518 U.S.1, 15 (1996).[3] The Ninth Circuit has expanded this privilege to cover confidential communications made to unlicensed counselors and representatives involved in psychotherapeutic treatment undertaken through employee assistance programs. Oleszko v. State Compensation Insurance Fund, 243 F.3d 1154, 1158-59 (9th Cir. 2001). Mr. Carbonniere has stated in a declaration that his treatment at St. Luke's included participation in individual and group counseling for his addiction, and the Court's *in camera* review of the medical records confirm that Mr. Carbonniere underwent psychotherapy-related treatment at St. Luke's.

Third, the Court also disagrees with the plaintiffs' contention that Mr. Carbonniere waived his psychotherapist-patient privilege by testifying at his deposition that he had undergone a detoxification program at St. Luke's for his opiate addiction. No legally sufficient waiver has been established by the plaintiffs since nothing in the submitted portions of Mr. Carbonniere's deposition show that he testified about any confidential communications he had with St. Luke's personnel that were made during the course of his treatment at St. Luke's.

Although the Court agrees with the United States that Mr. Carbonniere's medical records from St. Luke's cannot be produced to the plaintiffs, or to anyone else, the Court cannot agree with the United States' request in its motion that the records either be returned to St. Luke's or be destroyed by the Court. Since the

---

[3] As the Supreme Court noted in Jaffe, Arizona has a similar statutory privilege barring the disclosure of confidential communications made to a licensed "behavior health professional" absent the waiver of the privilege by the client. A.R.S. § 32-3283.

undersigned Judge has reviewed the records *in camera*, the Court must retain the records for any future appellate review. To that end, the Court will place the records in a sealed envelope and will have the Clerk of the Court file that envelope under seal. The actual medical records will not be viewed by any Clerk's Office personnel. Therefore,

IT IS ORDERED that the United States' Motion for Protective Order Precluding Disclosure of the Treatment Records Mailed to the Court by St. Luke's Behavior Health Center (Doc. 107) is granted pursuant to Fed.R.Civ.P. 26(c)(1)(A) and that the Court forbids the disclosure of the medical records of non-party Steven Carbonniere submitted to the Court by St. Luke's Behavior Health Center pursuant to the plaintiffs' subpoena duces tecum.

IT IS FURTHER ORDERED that the medical records of non-party Steven Carbonniere submitted to the Court by St. Luke's Behavior Health Center are to be placed in a sealed envelope and that envelope, which is not to be opened for docketing purposes, shall be filed by the Clerk of the Court UNDER SEAL.

DATED this 31st day of August, 2016.

Paul G. Rosenblatt
United States District Judge